JL

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jonathan T. Tate, | No.  CV 20-01917-PHX-SPL (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| Centurion of Arizona, et al., | |
| Defendants. | |

On October 2, 2020, Plaintiff Jonathan T. Tate, who is confined in the Arizona State Prison Complex-Lewis, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983, an Application to Proceed In Forma Pauperis, and a Motion for Preliminary Injunction (Doc. 4).  In a December 3, 2020 Order, the Court denied the deficient Application to Proceed and gave Plaintiff 30 days to pay the filing and administrative fees or file a complete Application to Proceed In Forma Pauperis

On January 8, 2021, Plaintiff filed a new Application to Proceed In Forma Pauperis (Doc. 9).  The Court will grant the Application to Proceed, deny without prejudice the Motion for Preliminary Injunction, order Defendants Corizon and Centurion to answer Count Three of the Complaint, and dismiss the remaining claims and Defendants without prejudice.

**I.      Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis.  28 U.S.C. § 1915(a).  Plaintiff must pay the statutory filing fee of $350.00.  28 U.S.C.

TERMPSREF

§ 1915(b)(1).  The Court will assess an initial partial filing fee of $10.00.  The remainder of the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2).  The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

**II.      Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**III.    Complaint**

In his three-count Complaint, Plaintiff sues the former contracted healthcare provider for the Arizona Department of Corrections (ADC) Corizon Health Service ("Corizon"), current ADC contracted healthcare provider Centurion of Arizona ("Centurion"), and Nurse Practitioners Cassidy Morales, Nicole Johnson, and Lawrence Ende. Plaintiff asserts claims of inadequate medical care. He seeks monetary and injunctive relief.

In Count One, Plaintiff alleges that Defendant Johnson diagnosed Plaintiff with chronic hepatitis C (HCV). Following his diagnosis, Defendant Johnson saw Plaintiff for chronic care every six months. Defendant Johnson told Plaintiff he was "below the level 2.0" and did not meet the criteria for treatment, despite "labor[a]tory evidence" of liver damage. Plaintiff asked Defendant Johnson to refer him to the HCV committee for treatment consideration, but Johnson said no.

Subsequently, Defendant Morales took over Plaintiff's HCV care. Defendant Morales only monitored Plaintiff's HCV and requested lab studies, although Plaintiff submitted numerous Health Needs Requests (HNRs) complaining of severe pain in his side. There was also "labor[a]tory evidence" of F-2 fibrosis and A-3 severe liver inflammation. According to Plaintiff, Defendant Morales has failed to "take any medical treatment[] steps" to prevent ongoing, aggressive progression of Plaintiff's liver damage, despite his serious medical need. Plaintiff claims Defendant Morales "chose to follow" an unconstitutional policy that allows medical providers to provide inadequate medical care. Plaintiff alleges that by providing inadequate medical care, Defendants Johnson and Morales violated his Eighth Amendment rights and state medical malpractice laws.

In Count Two, Plaintiff alleges that at some point, he saw Defendant Ende regarding

his HCV.  Plaintiff explained to Defendant Ende that his HCV levels were "very bad," and Ende told Plaintiff that his "lab levels" were normal, and he did not need treatment. Plaintiff "express[ed]" that Defendant Ende should reconsider placing Plaintiff on HCV treatment to prevent liver damage.  Defendant Ende said no and, despite lab studies and other medical evidence of liver damage, fibrosis, and inflammation, Ende told Plaintiff he did not meet the criteria for treatment, his HCV could not "do [him] any harm," and it could "go away on its own."  Plaintiff alleges that Defendant Ende refused to treat Plaintiff without a reason or medical justification.

In Count Three, Plaintiff alleges that Defendant Corizon was directly responsible for providing healthcare to ADC prisoners, including treating HCV.  Plaintiff asserts that Corizon had a policy that allowed HCV treatment only for extreme cases, and Corizon refused to treat Plaintiff's HCV because he did not meet the criteria for treatment.  Plaintiff claims that after Defendant Centurion took over the healthcare contract in July 2019, Centurion also refused to treat his HCV, although Defendants "know of" Plaintiff's HCV and lab levels.  Plaintiff contends that Corizon and Centurion's policy of only treating extreme cases of HCV is a deliberately indifferent policy and therefore violates his constitutional rights.

As his injury for all counts, Plaintiff claims he has suffered severe, irreparable liver damage and future health complications.

**IV.    Failure to State a Claim**

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment.  To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both

know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

### A.   Defendant Johnson

Plaintiff alleges that Defendant Johnson refused to refer Plaintiff to the HCV

committee for treatment consideration because Plaintiff did not meet the criteria for treatment, despite laboratory evidence of liver damage.  Plaintiff does not identify any specific test results that showed he had liver damage, let alone allege that Defendant Johnson was aware of any such results.  Absent additional information, Plaintiff has failed to state a deliberate indifference claim against Defendant Johnson, and this Defendant will be dismissed.

**B.    Defendant Morales**

Plaintiff claims that Defendant Morales failed to treat his HCV, although Plaintiff submitted numerous HNRs complaining of severe pain in his side.  Plaintiff does not identify any particular HNR, such as when and to whom he submitted an HNR, the information he included in the HNR, or the response to the HNR.  Plaintiff also alleges there was laboratory evidence of F-2 fibrosis and A-3 severe liver inflammation, but he does not identify any specific tests that showed fibrosis or severe liver inflammation, such as when the tests occurred.  Plaintiff claims Defendant Morales "chose to follow" an unconstitutional policy that allows medical providers to provide inadequate medical care, but he does not identify a specific policy that Morales followed or explain how following that policy amounted to deliberate indifference to his serious medical needs.  As presented, Plaintiff has not stated a deliberate indifference claim against Defendant Morales, and this Defendant will be dismissed, as will Count One.

**C.    Defendant Ende**

Plaintiff alleges that Defendant Ende refused to treat his HCV, despite lab test results and other evidence that Plaintiff has liver damage, fibrosis, and inflammation.  Plaintiff's allegations indicate that he merely disagrees with Defendant Ende's determination that Plaintiff did not meet the criteria for treatment because his "lab levels" were normal. At most, Plaintiff's allegations might indicate that Defendant Ende was negligent or committed medical malpractice with respect to Plaintiff's treatment, but neither negligence nor malpractice amounts to deliberate indifference.  The Court will therefore dismiss Defendant Ende and Count Two.

**V.     Claims for Which an Answer Will be Required**

Liberally construed, Plaintiff has stated a claim in Count Three against Defendants Corizon and Centurion based on their policy of treating only what they deem to be "extreme" cases of HCV.  The Court will require Defendants Corizon and Centurion to answer Count Three of the Complaint.

**VI.    Motion for Preliminary Injunction**

In his Motion for Preliminary Injunction, Plaintiff seeks an injunction to require Defendants to treat his HCV with direct-acting antiviral agents (DAAs).

**A.     Standard for Preliminary Injunction**

Whether to grant or deny a motion for a preliminary injunction is within the Court's discretion.  *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132-33 (9th Cir. 1979).  To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The moving party has the burden of proof on each element of the test.  *Envtl Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).  Where a movant seeks a mandatory injunction, rather than a prohibitory injunction, injunctive relief is "subject to a higher standard" and is "permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'"  *Hernandez v. Sessions,* 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).[1]

**B.     Plaintiff's Allegations**

Plaintiff was diagnosed with HCV in 2006.  In addition to HCV, Plaintiff suffers from depression, high blood pressure, arthritis, and asthma that are caused by or

---

[1] A mandatory injunction orders a responsible party to take action, while "a prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits."  *Marlyn Nutraceuticals*, 571 F.3d at 879 (internal quotation marks omitted).

TERMPSREF

exacerbated by his HCV.  Plaintiff asserts that because of these conditions, he should immediately be treated with DAAs for his HCV.  He states that although his diseases are progressing and his health is deteriorating, Defendants have refused to provide DAAs, which have a 90 to 95% chance of curing his HCV.

Plaintiff asserts that HCV constitutes a serious medical need, and if his HCV is treated with DAAs, his risk of disease progression to cirrhosis, liver cancer, or severe fibrosis "would be reduced to zero."  Early treatment also affords numerous other health benefits.  Plaintiff contends that Defendants have "deviated from the standard of care by refusing to prove an available, safe, and effective cure" for his HCV.  In addition, HCV is the cause of liver damage and other severe symptoms.  Thus, according to Plaintiff, Defendants are acting with deliberate indifference to his serious medical need for HCV treatment.

Plaintiff states that he is likely to suffer irreparable harm without treatment because he has stage 2 fibrosis and A-3 liver inflammation and reiterates that 20 to 50% of all HCV patients progress to cirrhosis.  Plaintiff asserts that individuals who have HCV have a 20 to 50% chance of the disease progressing to cirrhosis, or severe scarring of the liver.  Cirrhosis can cause liver failure and other life-threatening complications, such as portal hypertension.  Of those who develop cirrhosis, 2 to 7% per year will develop liver cancer.  Cirrhosis also has many life-threatening complications, including portal hypertension and liver failure, and in nearly 20% of cases, progression to hepatocellular carcinoma.

Plaintiff argues that there is only one recognized way to treat HCV—that is, with DAAs.  He contends that under the Eighth Amendment, the intentional provision of inferior or less efficacious treatment for non-medical reasons constitutes deliberate indifference.  Thus, Plaintiff asserts, Defendants are exposing him to an excessive risk to his health by (1) refusing to treat his serious medical need; (2) knowingly providing less efficacious care that consists of mere monitoring and no treatment; and (3) deviating from the applicable medical standard of care without medical justification.

. . . .

**C.      Discussion**

**1.      Likelihood of Success on the Merits**

"The first factor under *Winter* is the most important— likely success on the merits." *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015).  Because likelihood of success on the merits is a "threshold inquiry," if Plaintiff fails to show the likelihood of success on the merits, the Court "'need not consider the remaining three [*Winter* elements].'" *Id.* (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)).  To assess the first *Winter* factor, the Court must determine whether Plaintiff is likely to succeed on the merits of his Eighth Amendment deliberate indifference claim.

Although Plaintiff has stated a claim for relief, he has not shown that he is likely to succeed on the merits of his deliberate indifference claim.  As discussed above, to prevail on a deliberate indifference claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.  *Jett*, 439 F.3d at 1096.  "Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060.  To act with deliberate indifference, a prison official must both know of and disregard an *excessive* risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837 (1994).

Plaintiff's allegations indicate that he disagrees with the decision not to treat his HCV, but disagreement between a prisoner and a medical provider does not rise to the level of deliberate indifference to his serious medical needs.  *See Sanchez*, 891 F.2d at 242. Plaintiff's allegations do not support a conclusion that Defendants know of but have disregarded an *excessive* risk to his health, and he has not shown that Defendants' course of treatment is medically *unacceptable* under the circumstances.  *See*, *e.g.*, *Floyd v. Dang*, 577 Fed. App'x 696, 697 (9th Cir. 2014) (affirming summary judgment in favor of defendants where plaintiff had not shown that the choice not to test him for hepatitis C was "medically unacceptable under the circumstances"); *Callegari v. Lee*, 507 Fed. App'x 679,

679 (9th Cir. 2013) (affirming summary judgment in favor of defendants where plaintiff did not show defendants were deliberately indifferent in their treatment of his hepatitis); *Nidez Valencia v. Corizon, LLC*, No. CV 17-03632-PHX-DGC (JZB), 2019 WL 2173681 (D. Ariz. May 20, 2019) (granting summary judgment in favor of defendants on deliberate indifference claim where plaintiff had not shown he was likely to suffer serious harm without immediate treatment with DAAs for chronic hepatitis C); *Helling v. McKinney*, 509 U.S. 25, 36 (1993) ("[T]he prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.").

Plaintiff has attached to his Motion documents that indicate that as of September 10, 2020, his lab test results were "within acceptable limits" and that no further action was needed. Thus, although Plaintiff disagrees with the decision, it appears Defendants based the decision not to treat his HCV based on his objective medical presentation. The Court concludes that Plaintiff has not shown that he is likely to succeed on the merits of his deliberate indifference claim.

### 2.      Likelihood of Irreparable Harm

In addition, Plaintiff has not shown that he will likely suffer irreparable harm in the absence of preliminary relief. There is no indication that Plaintiff's hepatitis C is likely to progress to the point that he will suffer irreparable harm before the merits of his claims can be addressed in the course of this litigation. Plaintiff's speculation that his condition will deteriorate and possibly cause permanent liver damage, liver cancer, or death is insufficient for a preliminary injunction. *See Caribbean Marine Servs.*, 844 F.2d at 674-675; *see also DeRoche v. Funkhouse*, No. CV 06-1428-PHX-MHM, 2008 WL 881286 (D. Ariz. Mar. 28, 2008) (finding that the plaintiff's "general claim of 'possible irreparable injury' of further liver damage and disease progression" was "simply too general to demonstrate a significant threat of irreparable injury").

The Court concludes that Plaintiff has not shown he is likely to suffer irreparable harm absent a preliminary injunction mandating treatment of his HCV with DAAs. Accordingly, the Court will deny without prejudice Plaintiff's Motion for Preliminary

1   Injunction.

2   **VII.   Warnings**

3        **A.      Release**

4        If Plaintiff is released while this case remains pending, and the filing fee has not

5   been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court

6   that he intends to pay the unpaid balance of his filing fee within 120 days of his release or

7   (2) file a non-prisoner application to proceed in forma pauperis.  Failure to comply may

8   result in dismissal of this action.

9        **B.      Address Changes**

10       Plaintiff must file and serve a notice of a change of address in accordance with Rule

11  83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other

12  relief with a notice of change of address.  Failure to comply may result in dismissal of this

13  action.

14       **C.      Copies**

15       Because Plaintiff is currently confined in an Arizona Department of Corrections unit

16  subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy

17  of every document he files or to submit an additional copy of every filing for use by the

18  Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule

19  of Civil Procedure 5.4.  Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by

20  including, with every document he files, a certificate of service stating that this case is

21  subject to General Order 14-17 and indicating the date the document was delivered to

22  prison officials for filing with the Court.

23       **If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he

24  will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a

25  copy of every document that he files, and include a certificate stating that a copy of the

26  filing was served; and (b) submit an additional copy of every filing for use by the Court.

27  *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing

28  being stricken without further notice to Plaintiff.

**TERMPSREF**

**D.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Application to Proceed In Forma Pauperis (Doc. 9) is **granted**.

(2)     As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $10.00.

(3)     Plaintiff's Motion for Preliminary Injunction (Doc. 4) is **denied without prejudice.**

(4)     Counts One and Two are **dismissed** without prejudice.

(5)     Defendants Johnson, Morales, and Ende are **dismissed** without prejudice.

(6)     Defendants Corizon and Centurion must answer Count Three.

(7)     The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Corizon and Centurion.

(8)     Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(9)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(10)   The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(11)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.

(12)     A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(13)     The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)     personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(h)(1) of the Federal Rules of Civil Procedure; and

(b)     within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(14)     Defendants Corizon and Centurion must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

1    (15)    Any answer or response must state the specific Defendant by name on whose

2    behalf it is filed.  The Court may strike any answer, response, or other motion or paper that

3    does not identify the specific Defendant by name on whose behalf it is filed.

4    (16)    This matter is referred to Magistrate Judge James F. Metcalf pursuant to

5    Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as

6    authorized under 28 U.S.C. § 636(b)(1).

7    Dated this 10th day of February, 2021.

8

9    Honorable Steven P. Logan
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28